## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| **WILLIAM ROJAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **2:17-cv-00281-JVB-JEM** |
| | ) | |
| **GOSMITH, INC. and DOES 1-20,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## DEFENDANT GOSMITH, INC.'S MOTION TO COMPEL ARBITRATION AND

## DISMISS OR STAY PROCEEDINGS

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4, Defendant GoSmith, Inc. ("GoSmith") hereby moves the Court for an order compelling Plaintiff William Rojas ("Plaintiff") to arbitrate on an individual basis the claims he has asserted in this lawsuit, and to dismiss or in the alternative stay this action pending the completion of arbitration, and submits the following Memorandum of Law in support:

## I.    INTRODUCTION

Plaintiff William Rojas entered into a binding contract with GoSmith under which he agreed to arbitrate the claims he has asserted in this lawsuit.  He has refused to honor his contractual obligations, and the Court should therefore compel arbitration and dismiss or stay this action pending completion of arbitration.

GoSmith offers a nationwide online marketplace that connects homeowners seeking home improvement services with service professionals in their local area.  On April 4, 2017, Plaintiff registered with GoSmith, and accessed the services provided by GoSmith, which

1

include job leads tailored to Plaintiff's specific trade and geographic location, and tools which allowed Plaintiff to submit bids and set appointments with homeowners.  As part of the enrollment process, Plaintiff agreed to be bound by GoSmith's terms of use, which includes an arbitration agreement.

Plaintiff has ignored his agreement with GoSmith and has filed a putative class action alleging that texts allegedly sent to him by GoSmith in connection with its services violate the Telephone Consumer Protection Act ("TCPA").  Those claims fall squarely within the arbitration agreement.  The Federal Arbitration Act, and binding U.S. Supreme Court and Seventh Circuit precedent require the enforcement of the arbitration agreement.  As discussed below, the Court should therefore compel Plaintiff to arbitrate his claims on an individual basis.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Created a GoSmith Account

GoSmith provides an online, nationwide home improvement marketplace for consumers and service professionals.  Declaration of Brenton Marrelli in Support of Motion to Compel Arbitration ("Marrelli Dec."), ¶ 3.  Upon registration, consumers may use GoSmith's website to submit a request for quotes on home improvement projects from service professionals in their local area.  GoSmith will then notify local service professionals of the consumer's job request. *Id*. at ¶ 4.  Service professionals may respond to the job notification by communicating a quote or bid to the consumer, and setting up appointments through the GoSmith website.  *Ibid*.  In order to utilize these online services, service professionals must register with GoSmith and accept its terms of use (the "Terms of Use").  *Id*. at ¶¶ 4-5.

Based on GoSmith's records, Plaintiff William Rojas of WJR Landscaping registered an account with GoSmith on April 4, 2017.  *Id*. at ¶¶ 4-9.  The account was created using a mobile

device running an Android operating system from internet protocol ("IP") address 73.247.125.138. *Id*. at ¶ 9. Before Plaintiff could complete the registration process and access job postings on GoSmith's website, he was required at the bottom of the registration page to check that he read and agreed to GoSmith's terms and its privacy policy. *Id*. at ¶¶ 8-9. Both the terms and the privacy policy are accessible from this screen via hyperlink, and clicking on the "terms" link will take the user to a screen which displays a copy of GoSmith's Terms of Use. *Id*. at ¶ 7. Plaintiff checked the box stating "I have read and agree to the terms & privacy policy," then clicked "See Job Matches," to complete his registration. *Ibid*. Plaintiff could not have registered and created an account without agreeing to GoSmith's Terms of Use, including the Arbitration Agreement. *Ibid*.

> ### B.      Plaintiff Agreed to Arbitrate His Claims

Plaintiff completed all steps necessary to register for GoSmith's services, and agreed to GoSmith's Terms of Use. *Ibid*. Plaintiff utilized those services, including by accessing GoSmith's website to view job notifications for landscaping services sought by different consumers in Plaintiff's locale, and responding to job notifications sent to him by GoSmith. *Id*. at ¶¶ 10-11.

The Terms of Use in effect at the time Plaintiff registered provide under the heading "Acknowledgement and Acceptance" that Plaintiff's use of GoSmith's website and services are "conditioned upon your acceptance without modification, of the following terms, conditions and notices." *Id*. at Ex. A at Page 1. The subject matter of the Terms of Use covers GoSmith's provision of the above-described services, including the submission of bid requests by consumers through GoSmith's website, job notifications provided by GoSmith to service

professionals, and the process by which consumers and service professionals may communicate and set up appointments through the GoSmith website.  *Id*. at Ex. A. at Pages 1-2.

The Terms of Use contains an arbitration provision (the "Arbitration Agreement") under the section entitled Dispute Resolution.  *Id*. at Ex. A. at Page 12.  The Arbitration Agreement provides in relevant part that:

> At the sole option of Smith, any claim, dispute or controversy arising out of, relating to or concerning in any way the Agreement or use of the Website shall be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its commercial arbitration rules. The decisions of the arbitrators shall be binding and conclusive upon all parties involved, and judgment upon any arbitration award may be entered by any court having competent jurisdiction.

*Ibid*.

The Arbitration Agreement also contains jury trial and class waivers, which state:

> IF ARBITRATION IS CHOSEN BY Smith WITH RESPECT TO A CLAIM, YOU WILL NOT HAVE THE RIGHT TO LITIGATE THE CLAIM IN COURT, HAVE A JURY TRIAL, OR ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE AAA CODE OF PROCEDURES. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE IN ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

*Ibid*.

## C.    Plaintiff Ignored the Terms of Use and Filed Suit

Plaintiff filed suit against GoSmith on June 30, 2017.  See Complaint, Doc. No. 1. Plaintiff alleges that GoSmith violated the TCPA by sending text messages to Plaintiff's cell phone in connection with "the marketing and sale of a service that connects individual

homeowners with businesses that provide home improvement, home repair, landscaping, cleaning, and other related services."  Complaint, ¶¶8, 14, 18-19, 33-34.

On July 26, 2017, GoSmith exercised its right to arbitration by conveying an arbitration demand through counsel.  Declaration of Artin Betpera at ¶ 3.  The arbitration demand was rejected by Plaintiff.  *Id.* at ¶ 4.

As discussed below, Plaintiff has filed this class action in violation of the Arbitration Agreement and class action waiver contained in the Terms of Use.

## III.    THE COURT SHOULD ORDER PLAINTIFF TO ARBITRATE HIS CLAIMS ON AN INDIVIDUAL BASIS

The Court should order Plaintiff to arbitrate his claims on an individual basis pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4 because Plaintiff entered into a binding, enforceable arbitration agreement in which he expressly waived his right to pursue those claims in court.

### A.    The FAA Applies to the Arbitration Agreement

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §2.  The Act "embodies a strong federal policy in favor of arbitration."  *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641 (7th Cir. 1993); *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2307 (2013) (courts must "rigorously enforce arbitration agreements according to their terms.")  It "requires both federal and state courts to apply a federal common law of arbitrability to the arbitration of disputes arising under contracts in commerce, a common law applicable equally in federal and state courts."  *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 854 (7th Cir. 2002).

The FAA applies to contracts "evidencing a transaction involving interstate commerce." 9 U.S.C §2. "The breadth of 'involving interstate commerce' is as expansive as that of the Commerce Clause." *Thompson v. Affiliated Computer Servs., Inc.*, No. 1:11-CV-1232-JMS-TAB, 2011 U.S. Dist. LEXIS 134375, at *1 (S.D. Ind. Nov. 2011) (citing to *Allied-Bruce Terminix Co's, Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995)). "Congress Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (internal quotations marks omitted).

GoSmith is located in California and provides its services across the United States. See Marrelli Dec., ¶ 3. The underlying transactions at issue involve the use of the Internet and other communication technologies to transmit home improvement job notifications or leads to independent service professionals across the United States. See *Id*. at ¶¶ 3-4. This is sufficient to meet the "involving commerce" requirement under the FAA. See *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (applying the FAA to a dispute involving internet commerce); *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1054 (10th Cir. 2008) ("the Internet is generally an instrumentality of interstate commerce"); *Citizens Bank*, supra (finding requisite commerce for FAA coverage even when individual transaction did not have "any specific effect upon interstate commerce" because the defendant engaged in business of the type at issue in multiple states) (internal quotation marks and citation omitted).

The FAA controls. Under the FAA, the Court should enforce the arbitration agreement.

### B.    The Dispute is Subject to a Binding Arbitration Agreement Under the FAA

The FAA requires courts to compel arbitration where: (1) there is a valid agreement to arbitrate between the parties; and (2) the agreement covers the dispute.  *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83-84 (2002).  Both elements are met here.

### 1.    A Written Agreement to Arbitrate Exists Between Plaintiff and GoSmith

Whether a valid arbitration agreement exists is a question of contract law.  *R.J. O'Brien & Assocs., Inc. v. Pipken*, 64 F.3d 257, 260 (7th Cir. 1995).  Federal courts rely on state contract law to determine whether an arbitration agreement constitutes a valid contract.  *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997).  "Under Indiana law, th[e] court determines whether an arbitration agreement exists as it would do if evaluating any other purported contract. That means determining, specifically, whether there was an offer, acceptance, and consideration." *Nuzzi v. Coachmen Indus., Inc.*, No. 3:09 CV 116, 2009 U.S. Dist. LEXIS 107463, at *8 (N.D. Ind. Nov. 2009) (citations omitted).

The Arbitration Agreement is supported by an offer and acceptance.  Specifically, Plaintiff agreed to be bound by the Terms of Use and the Arbitration Agreement contained therein by checking a box at the completion of the GoSmith registration process confirming his agreement to the GoSmith Terms of Use.  Marrelli Dec., ¶ 7-9.  Plaintiff also had the opportunity to review GoSmith's Terms of Use by clicking on the "terms" hyperlink appearing next to the box that was checked to signify his acceptance of those terms.  *Id*. at ¶ 7.

This is a common type of online agreement known as a "clickwrap" agreement.  "With clickwrap agreements, the webpage user manifests assent to the terms of a contract by clicking

an 'accept' button in order to proceed." *Van Tassell v. United Mktg. Group, LLC*, 795 F. Supp.

2d 770, 790 (N.D. Ill. July 5, 2011).  "Because clickwrap agreements require affirmative action

on the part of the user to manifest assent, courts regularly uphold their validity[.]"  *Ibid*; see also

*Treiber & Straub, Inc. v. UPS*, 474 F.3d 379, 382 (7th Cir. 2007) (noting that clickwrap

agremeents are "common in Internet commerce," and enforcing clause contained in 480 pages of

terms accepted by the plaintiff online by "clicking a box on the screen."); *Cordas v. Uber Techs.,*

*Inc.*, 228 F. Supp. 3d 985, 990–91 (N.D. Cal. 2017) ("[b]y creating an account on the Uber app,

[Plaintiff] affirmatively acknowledged the agreement and is bound by its terms."); *Fteja v.*

*Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. Jan. 2012) ("clickwrap agreements have

been routinely upheld by circuit and district courts.").

      Here, Plaintiff created a GoSmith account, and in doing so affirmatively acknowledged

his acceptance of GoSmith's Terms of Use.  *Id*. at ¶ 7-9.  To complete the registration process

and create a GoSmith account, Plaintiff clicked the button stating "I have read and agree to the

terms & privacy policy."  *Ibid*.  The phrase "terms" was hyperlinked to a full copy of the Terms

of Use.  *Ibid*.  Plaintiff was therefore on notice that by creating his GoSmith account, he was

consenting to the Terms of Use, which contain the Arbitration Agreement.  He is therefore bound

by the Arbitration Agreement.  See e.g. *Van Tassell,* supra; *Selden v. Airbnb, Inc.*, No. 16-cv-

00933 (CRC), 2016 U.S. Dist. LEXIS 150863, at *5 (D.D.C. Nov. 2016) (user bound by

arbitration provision because he was told that "By signing up, I agree to Airbnb's [hyperlink]

Terms of Service" and the user proceeded to sign up); *Starke v. Gilt Groupe, Inc.*, No. 13 Civ.

5497 (LLS), 2014 U.S. Dist. LEXIS 58006, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration

provision in hyperlinked Terms of Use; plaintiff's "decision to click the 'Shop Now' button

represents his assent to [the Terms].")

Plaintiff's acceptance of the Terms of Use is also supported by consideration. "As long as the facts demonstrate that some consideration has been exchanged, Indiana courts will not inquire into the adequacy of the consideration exchanged in the contract." *Kreimer v. Delta Faucet Co.*, No. IP 99-C-1507-T/G, 2000 U.S. Dist. LEXIS 9610, at *6 (S.D. Ind. 2000) (internal quotations omitted). "This consideration can be either a benefit to [Plaintiff] or a detriment to [GoSmith]." *Ibid.*

After registering for an account and accepting GoSmith's terms of use, Plaintiff was provided access to exclusive portions of GoSmith's website for service professionals that included: (1) job leads tailored to Plaintiff's landscaping/landscape architect trade and geographic location he confirmed during the registration process; (2) the ability to submit bids to homeowners seeking landscaping work; and (3) the ability to set up appointments with homeowners seeking landscaping work. Marrelli Dec., ¶ 10. Plaintiff utilized GoSmith's website by viewing and responding to job leads for landscaping services in his designated locale. *Id.* at ¶ 11. Plaintiff was provided with these clear benefits in exchange for his acceptance of the Terms of Use. The Terms of Use and Arbitration Agreement contained are therefore supported by adequate consideration.

For the reasons set forth above, the Arbitration Agreement in supported by the basic elements necessary to be a valid contract under Indiana law.

### 2.    Plaintiff's Claims Are Covered by the Arbitration Agreement

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25

(1983); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 54 (7th Cir. 1995) ("we resolve any doubts in favor of arbitration."); *Tenbrink v. Toshiba America Medical Systems, Inc.,* 2013 WL 3071276, *2-4 (S.D. Ind. June 18, 2013) (granting a motion to compel arbitration and explaining that "arbitration agreements are viewed favorably under federal law.")  "Thus, an order to arbitrate a particular dispute should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *McBride v. St. Anthony Messenger Magazine*, No. 2:02-cv-0237-JDT-WTL, 2003 U.S. Dist. LEXIS 6449, at * 11 (S.D. Ind. Feb. 2003) (internal quotation marks omitted).

The Arbitration Agreement here is broadly worded, and requires Plaintiff to arbitrate "any claim, dispute or controversy arising out of, relating to or concerning in any way the [Terms of Use] or use of the Website."  Marrelli Dec., Ex. A at Page 12.  Arbitration clauses containing similar language – including the phrases "arising out of," and "relating to," – are considered "extremely broad and capable of an expansive reach."  *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999); *Tuttle v. Sallie Mae, Inc.*, No. 1:34-CV-183 JD-RBC, 2014 U.S. Dist. LEXIS 16593, at *14 (N.D. Ind. Feb. 2014) ("The Seventh Circuit has repeatedly construed the phrases 'arising out of' and 'relating to' in arbitration agreements very broadly.")  Such clauses "necessarily create a presumption of arbitrability."  *Keifer*, supra at 910. And so long as claims "touch matters," covered by the contract at issue, they must be arbitrated. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 at n.9 (1985); *see also Scan Top Enter. Co., Ltd. v. Winplus N. Am., Inc.*, No. 14 C 7505, 2016 U.S. Dist. LEXIS 30675, at *10-11 (N.D. Ill. Mar. 2016) ("All that is required is that the factual allegations merely 'touch matters' covered by the arbitration clause and all doubts are to be resolved in favor of arbitrability.")

10

Here, Plaintiff alleges GoSmith violated the TCPA by sending him 73 unsolicited text messages between January 15, 2017 and April 17, 2014 in connection with "a service that connects individual homeowners with businesses that provide home improvement, home repair, landscaping, cleaning, and other related services."  Complaint, ¶¶8, 14, 19.  These are the very services that are encompassed by, and delineated in the Terms of Use, including the process by which consumers may submit job requests on GoSmith's website, GoSmith's communication of job requests to local service professionals, and communication between consumers and service professionals via the GoSmith website.  Marrelli Dec., Ex. A.  Because texts are alleged to have been sent in connection with the very services covered by the Terms of Use, Plaintiff's claims fall within the ambit of Arbitration Clause.  See e.g. *Tuttle v. Sallie Mae, Inc.,* No. 1:13-CV-183 JD-RBC, 2014 U.S. Dist. LEXIS 16593, at **15-16 (N.D. Ind. Feb. 11, 2014) (Plaintiff's TCPA claims within scope of arbitration agreement covering any claim "that arises from or relates in any way," to the underlying agreement at issue.)

Finally, the fact that some of the text messages at issue are alleged to have been sent prior to the formation of the Arbitration Agreement matters not.  Complaint, ¶ 19.  That the text messages were sent in connection with GoSmith's services is all that is required for these pre-agreement text messages to fall within the scope of the broad Arbitration Agreement.  Plaintiff agreed to arbitrate "any" dispute "arising out of or relating to," either the Terms of Use, or his use of GoSmith's website without any sort of temporal limitation.  "As the arbitration clause . . . does not contain any temporal limitation," the "relevant inquiry," is whether Plaintiff's claims relate to the subject matter of the Terms of Use, and "not when they arose."  *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999); see also *Alwert v. Cox Communs., Inc. (In re Cox Enters., Inc. Set-Top Cable TV Box Antitrust*

11

*Litig.*), 835 F.3d 1195, 1201-02 (10th Cir. Aug. 2016) (broadly worded arbitration agreement encompassed plaintiffs' claim "even though it arises out of events that predated the agreement.") Therefore, so long as the claims "touch upon" the subject matter of the Terms of Use in some manner – which as set forth above they do – they are subject to the Arbitration Agreement, and must be arbitrated. *Mitsubishi Motors*, supra; *Scan Top*, supra.

### C.    Any Disputes Over the Arbitrability of Plaintiff's Claims Must be Decided by the Arbitrator

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986).  However, the parties are free to delegate issues of arbitrabiltiy to the arbitrator, and if they do, the Court must leave those issues for the arbitrator to decide. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Johnson v. Western & Southern Life Ins. Co.*, 598 Fed. Appx. 454, 455-56 (7th Cir. 2015) (district courts are "required to . . . treat the delegation provision as valid and enforce it, thereby letting the arbitrator decide [the plaintiff's] challenges to the validity of the arbitration agreement.")

"[B]y incorporating the AAA rules into their agreement, parties evidence their clear and unmistakable intent to allow the arbitrator to decide the question of arbitrability." *Gilman v. Walters*, 61 F.Supp.3d 794, 800-01 (S.D. Ind. Nov. 2014)[1].  Here, the Arbitration Agreement

---

[1] AAA Commercial arbitration rule R-7 provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Commercial Arbitration Rule R-7 (available at https://www.adr.org/sites/default/files/Commercial%20Rules.pdf).  Hence, incorporation of AAA rules into the

provides that disputes between Plaintiff and GoSmith "shall be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its commercial arbitration rules."  Marrelli Dec., Ex. A at Page 12.  This language constitutes evidence of the parties' "clear and unmistakable intent to allow the arbitrator to decide the question of arbitrability."  *Gilman*, supra.  To the extent, therefore, that the Plaintiff disputes the arbitrability of his claim that dispute must be submitted to the arbitrator for decision.

**D.    The Action Should be Dismissed or Stayed Pending the Completion of Plaintiff's Individual Arbitration**

Once the district court finds that the issues in a lawsuit require arbitration, the FAA requires the court to "stay the trial of the action until such arbitration has been had."  9 U.S.C. § 3.  However, "the weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."  *Mustafaa v. United Healthcare*, No. 1:10-cv-1283-TWP-TAB, 2011 U.S. Dist. LEXIS 28311, at *3 (S.D. Ind. Mar. 18, 2011) (citing to *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

As set forth above, the entirety of Plaintiff's TCPA claims fall within the scope of the Arbitration Agreement, and must be arbitrated.  Thus, Plaintiff's claims should be dismissed as

---

Arbitration Agreement constitutes "clear and unmistakable" evidence of the parties' intent to delegate the issue of arbitrability.  Although the Seventh Circuit has not addressed this issue directly, a number of sister circuits have followed this rule.  See *Fadal Machining Centers, LLC v. Compumachine, Inc.*, 461 Fed. App'x 630, 632 (9th Cir. 2011); *Fallo v. High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 211 (2d Cir. 2005); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005).  Additionally a number of district courts within the Seventh Circuit have applied this rule in determining whether the parties have delegated the issue of arbitrability to the arbitrator.  See e.g. *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 701-02, (N.D. Ill. May 2016) (adopting the "consensus view," that "[b]y incorporating the AAA's rules, the . . . arbitration clause clearly and unmistakably delegates authority to the arbitrators to decide whether [plaintiff's] claims are arbitrable."); *Imperial Crane Sales, Inc. v. Sany Am., Inc.*, No. 15-C-859, 2015 U.S. Dist. LEXIS 91549, at *13-14 (N.D. Ill. July 2015) (concurring with "overwhelming majority," of courts that follow this rule); *Boehm v. Getty Images (US), Inc.*, No. 16-cv-311-jdp, 2016 U.S. Dist. LEXIS 144691, at *7 (W.D. Wis. Oct. 2016) (the "consensus view," is that "reference to the AAA's Rules in an arbitration clause reserves the threshold questions of arbitrability to the arbitrator.").

"all of the issues raised in the district court must be submitted to arbitration." *Ibid*. Alternatively, the FAA requires that, at minimum, this action be stayed pending the completion of arbitration.

**E.      If the Court Finds That Arbitration Cannot be Compelled at This Time, it Should Stay the Action Except to Allow Limited Discovery, Additional Briefing, and if Necessary a Limited Trial on Arbitrability**

The Third Circuit has laid out a helpful roadmap for courts to follow in resolving disputes over the enforceability of an arbitration agreement:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.  But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question.  After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not  warranted because the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause, the court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions.

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks and citations omitted); see also *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (under the FAA, the court should evaluate disputes over the existence of an arbitration agreement based on a summary judgment standard.  If the district court then determines "that the making of the arbitration agreement is seriously disputed, the court shall proceed summarily to the trial thereof.")

14

In the event the Court finds for any reason that arbitration cannot be compelled at this time, it should follow this same road map, and: (1) allow the parties to obtain limited discovery on the question of arbitrability; (2) allow GoSmith to file either a renewed motion to compel arbitration or motion for summary judgment further addressing this question; (3) if denied, proceeding summarily to a trial regarding the making of the arbitration agreement or the failure, neglect or refusal to perform the same; and (4) ordering all other proceedings in this action stayed pending the resolution of the question of arbitrability.

## IV.    CONCLUSION

For the reasons set forth above, GoSmith respectfully requests that the Court compel individual arbitration and dismiss Plaintiff's Complaint.  Alternatively, GoSmith requests that the Court compel individual arbitration and stay all proceedings pending arbitration.  If for any reason the Court finds that it cannot compel arbitration at this time, GoSmith respectfully requests that it permit limited discovery regarding arbitration, and stay all other proceedings until further briefing, and if necessary a limited trial on the issue of arbitrability is completed.

Dated this 25th day of August, 2017.

*/s/ Artin Betpera*
Artin Betpera, Esq.
*Pro Hac Vice*
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626
Telephone: (714) 800-1421
Facsimile: (714) 800-1499
betpera.artin@dorsey.com

Attorneys for Defendant
GOSMITH, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 25th day of August, 2017, I have served a copy of the

foregoing document on the following by Notice of Electronic Filing or, if the party served does

not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, facsimile

or e-mail:

David B. Levin, Esq.
Law Offices of Todd M. Friedman
111 West Jackson Blvd., Suite 1700
Chicago, IL 60604
dlevin@toddflaw.com

Andrew Heidarpour
Heidarpour Law Firm, PLLC
1300 Pennsylvania Ave. NW
Washington, D.C. 20004
AHeidarpour@HLFirm.com

This 25th day of August, 2017.

*/s/ Artin Betpera*
Artin Betpera