UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| WILLIAM ROJAS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:17-cv-00281-JVB-JEM |
| | ) | |
| v. | ) | Honorable Judge Joseph S. Van Bokkelen |
| | ) | |
| GOSMITH, INC. and DOES 1-20, | ) | Magistrate Judge John E. Martin |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS**

Now comes the Plaintiff, WILLIAM ROJAS, by and through his attorneys, and for his Response to the Motion to Compel Arbitration and Dismiss or Stay Proceedings filed by the Defendant, GOSMITH, INC., Plaintiff hereby states as follows:

**I.   INTRODUCTION**

Plaintiff filed his Complaint herein (Doc. #1), alleging that Defendant sent numerous unsolicited text messages to Plaintiff's cellular telephone without his consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. At the time Plaintiff started receiving these text messages, he had not previously sought out or requested Defendant's services. Plaintiff had not transacted any business with Defendant, nor had he provided authorization for Defendant to contact him in any way. Despite replying to Defendant's text messages in an attempt to get them to stop, Plaintiff continued to receive these messages from Defendant. *See* Declaration of Plaintiff, filed as an attachment to this Response, par. 3-6. *See also* Doc. #1, par. 17-21.

The TCPA was designed to prevent calls and text messages like the ones described herein, and to protect the privacy of citizens like Plaintiff. The U.S. Supreme Court has noted that

consumers are outraged over the proliferation of automated telephone calls that are intrusive, nuisance calls, found to be an invasion of privacy by Congress. *See Mims v. Arrow Fin. Servs. LLC*, 132 S.Ct. 740, 745 (2012). "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Id.* at 744. "Congress referred to the interest protected by the TCPA as a 'privacy' interest, noting that '[e]vidence...indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.' TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional statement of findings)." *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838 at *2, No. 11 C 5886 (N.D. Ill. August 10, 2012). "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii) [of the TCPA]." *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 667 (2016) (citation omitted).

In response to Plaintiff's Complaint, Defendant has filed a Motion to Compel Arbitration and Dismiss or Stay Proceedings (Doc. #16). Defendant claims that Plaintiff agreed to a "Dispute Resolution" provision, including an agreement to arbitrate certain disputes, that was contained in the "Smith Consumer Provider Agreement" on Defendant's website. Plaintiff asserts that the agreement to arbitrate is not enforceable.

Plaintiff will show that there was no valid contract formed between the parties that included an arbitration provision. Any such agreement alleged by Defendant fails due to a lack of a meeting of the minds, a lack of mutual assent to the one-sided arbitration clause, and a failure of consideration given by Defendant for Plaintiff's alleged agreement to arbitrate. Plaintiff will also show that the even if an agreement was formed between the parties, it should be invalidated due to its unconscionability. Finally, the claims Plaintiff has raised in this lawsuit are outside the scope

2

of Defendant's "Dispute Resolution" clause, based upon both the time at which his claims arose and the coverage language contained in that clause.

## II.     APPLICABLE LEGAL STANDARDS

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, arbitration can only be compelled if three elements are shown, "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "The determination of whether parties are contractually bound to arbitrate and what issues they are bound to arbitrate are matters to be determined by the court." *Shimkus v. O'Charley's, Inc.*, 2011 WL 3585996 at *2, No. 1:11-CV-122-TLS (N.D.Ind. August 16, 2011), citing *Granite Rock Co. v. Int'l Broth. of Teamsters*, 130 S.Ct. 2847, 2855 (2010) (additional citations omitted).

"Indiana courts apply ordinary contract principles to arbitration agreements." *Id.* at *4, citing *Showboat Marina Casino P'ship v. Tonn & Blank Const.*, 790 N.E.2d 595, 598 (Ind.Ct.App. 2003), and *Mislenkov v. Accurate Metal Detinning, Inc*., 743 N.E.2d 286, 289 (Ind.Ct.App. 2001). "Like other contracts, however, arbitration agreements may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.*, quoting *Doctor's Assocs., Inc. v. Casarotto*, 116 S.Ct. 1652, 1656 (1996).

"[T]he FAA does not require parties to arbitrate when they have not agreed to do so…nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement…" *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 109 S.Ct. 1248, 1255 (1989) (citations omitted). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has

not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 106 S.Ct. 1415, 1418 (1986) (citations omitted).

### III. DEFENDANT CANNOT COMPEL ARBITRATION BECAUSE NO BINDING CONTRACT WAS CREATED BETWEEN THE PARTIES.

#### A. NO BINDING CONTRACT WAS CREATED BECAUSE THERE WAS NO MEETING OF THE MINDS.

Under Indiana law, "[a] valid contract requires offer, acceptance, and a meeting of the minds." *DeGroff v. MascoTech Forming Technologies-Fort Wayne, Inc.*, 179 F.Supp.2d 896, 903 (N.D.Ind. 2001), citing *Flynn v. AerChem, Inc.*, 102 F.Supp.2d 1055, 1059 (S.D.Ind. 2000). "A 'meeting of the minds' occurs when the parties have the same intent." *Id.*, citing *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 883 (Ind.Ct.App. 2000). A meeting of the minds "is essential to the formation of a contract." *Wallem*, 725 N.E. 2d at 883, citing *Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind.Ct.App. 1994). "Indiana law places on the party seeking to enforce the contract the burden of showing 'that the contractual provisions were explained to the other party and came to his knowledge and there was in fact a real and voluntary meeting of the minds.'" *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F.Supp.2d 985, 997 (S.D.Ind. 2001), quoting *Weaver v. American Oil Co.*, 276 N.E.2d 144, 146 (Ind. 1971).

Under the circumstances present in this case, it is clear there was no meeting of the minds between Plaintiff and Defendant as to the arbitration provision. Defendant claims that Plaintiff visited Defendant's website and accepted its terms of use on April 4, 2017. Plaintiff does not dispute that he visited Defendant's website on that date. However, the sole reason Plaintiff visited Defendant's website on that date was to try to figure out who was sending him the unsolicited text messages and how he might be able to get them to stop. Plaintiff did complete the sign-up form on Defendant's website, but he had no intention whatsoever of using any of Defendant's services. *See*

Declaration of Plaintiff, par. 9-10. Furthermore, Plaintiff never agreed to Defendant's Terms of Use, Consumer Provider Agreement, or Dispute Resolution provision, nor was he aware of their existence until Defendant filed its Motion to Compel Arbitration. *Id.* at par. 11-13. A closer review of the page in question on Defendant's website shows how this was possible.

Exhibit B to the Declaration of Brenton Marrelli ("Marrelli"), filed by Defendant in support of its Motion to Compel Arbitration (Doc. #16-4), purports to be a screenshot of the internet page in question. While it is unclear from Marrelli's Declaration whether that was the same condition in which Defendant's website existed on April 4, 2017, what is clear is that the box next to the statement "I have read and agree to the terms & privacy policy" is already checked. According to Plaintiff, this is the same condition in which Defendant's website existed on April 4, 2017. *See* Declaration of Plaintiff, par. 14. Plaintiff asserts that he did not physically click on that box himself, nor did he enter a check mark in that box.

That box on the page in question on Defendant's website remains in the same condition. *See* Declaration of David Levin ("Levin"), filed as an attachment to this Response, and Exhibit A thereto. When visiting Defendant's website, the same box on the same page – http://www.gosmith.com/SignUp.html – is already checked when one's browser arrives at that page. Marrelli claims that Plaintiff "was required at the bottom of the registration page to check that he read and agreed to GoSmith's terms and its privacy policy." *See* Declaration of Marrelli (Doc. #16-2), par. 7. He further claims that "Plaintiff checked the box…" *Id.* However, Marrelli's statements are refuted by the state of his own company's website. There can be no reason that the box in question is pre-checked other than to speed up the registration process and discourage potential users from noticing the small link to Defendant's terms of use.

5

The Seventh Circuit Court of Appeals recently noted some of the general principles which must be considered when determining whether a party who clicks on a box on a website has thereby entered into a binding written contract.

> Translated to the Internet, we might ask whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms. This is a fact-intensive inquiry: **we cannot presume that a person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.) Indeed, a person using the Internet may not realize that she is agreeing to a contract at all**, whereas a reasonable person signing a physical contract will rarely be unaware of that fact.

*Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034-1035 (7th Cir. 2016) (emphasis added).

The layout of the relevant page on Defendant's website raises further concerns. "*No court has suggested that the presence of a scrollable window containing buried terms and conditions of purchase or use is, in itself, sufficient for the creation of a binding contract.*" *Id.* at 1036 (emphasis added). That is precisely the situation present in this case. Both Exhibit B to the Declaration of Marrelli and Exhibit A to the Declaration of Levin show the same thing. Not only is the box in question already pre-checked, but the statement next to the box, "I have read and agree to the terms & privacy policy," is written in a font much smaller and lighter in color than the fonts used elsewhere on that page. That statement is displayed below a large green box containing the words "SIGN UP" or "See Job Matches" (depending upon which version of the page is viewed). The green box where the user clicks to register for Defendant's services is significantly larger in size than the pre-checked box and statement below it. It is entirely possible that a user could complete the form, scroll down and click on the large, green "SIGN UP" or "See Job Matches" box, without ever realizing the pre-checked box and statement below it.

6

Furthermore, the user must click directly on the tiny word "terms" in the aforementioned statement to access another page containing Defendant's terms of use. A copy of the relevant terms are attached to the Declaration of Marrelli as Exhibit C (Doc. #16-3). The user must then scroll through enough text to fill 11 full printed pages in that Exhibit C to reach a section titled "Dispute Resolution" where the arbitration provision is hidden.

As the Seventh Circuit discussed in *Sgouros*, just because Plaintiff clicked the large, green box on Defendant's website – without having to place a check mark in the box below it first – and above a tiny link to Defendant's terms of use, it does not follow that Plaintiff therefore had notice of all contents of the terms of use. In order to arrive at the arbitration provision in question, Plaintiff would have had to click on the tiny "terms" link and scroll through page after page of legal language. This conclusion is supported by Plaintiff's own Declaration in which he stated that he was not previously aware of the Terms of Use, Consumer Provider Agreement, or Dispute Resolution provision. *See* Declaration of Plaintiff, par. 11-13.

"Clarity and conspicuousness of arbitration terms are important in securing informed assent." *Van Tassell v. United Marketing Group,* LLC, 795 F.Supp.2d 770, 790 (N.D.Ill. 2011), quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2nd Cir. 2002). It is a basic tenant of contract law that a contract requires a manifestation of mutual assent. *Id.* at 789 (citations omitted). Indiana law requires mutual assent in order to form a valid contract. *Payne v. Menard, Inc.*, 2017 WL 193001 at *3, No. 2:15-CV-317-JVB-PRC (N.D.Ind. January 17, 2017) (citations omitted).

Defendant claims that its website's format creates what is sometimes referred to as a "clickwrap" agreement, and that because it requires an affirmative action on the part of the user to manifest assent, the arbitration provision should be upheld as valid. *See* Doc. #16, at p. 7-8. That

7

argument might carry some weight if the user of Defendant's website had to check the box in question on his or her own. However, because the box is already pre-checked, and the terms at issue are only found by clicking on a tiny, inconspicuous link at the bottom of the page, the user does nothing to manifest assent to the hidden agreement to arbitrate. The only thing to which Plaintiff agreed when he clicked the large, green box on Defendant's website was to either "See Job Matches" or to "SIGN UP," depending upon which version of the webpage he viewed. *See* Exhibit B to Declaration of Marrelli (Doc. #16-4) and Exhibit A to Declaration of Levin. In so doing, Plaintiff clearly did not manifest his assent to arbitrate any disputes that might arise between him and Defendant.

### B. NO BINDING CONTRACT WAS CREATED BECAUSE THERE WAS A LACK OF CONSIDERATION.

"It is a basic tenet of contract law that in order for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise…Consideration is defined as bargained for exchange whereby the promisor (here [Plaintiff]) receives some benefit or the promisee (here [Defendant]) suffers a detriment…**Often, consideration for one party's promise to arbitrate is the other party's promise to do the same.**" *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997) (emphasis added; citations omitted). "Under Indiana law, a mutual promise to arbitrate future disputes constitutes consideration." *Versmesse v. AT & T Mobility LLC*, 2014 WL 856447 at *6, No. 3:13 CV 171 (N.D.Ind. March 4, 2014), citing *Gibson*, 121 F.3d at 1131.

In *Versmesse*, this same District Court found consideration for a valid and binding arbitration agreement because both parties agreed to be bound by an arbitrator's decision. However, that is not the case with Defendant's "Dispute Resolution" clause, which states that "**[a]t the sole option of Smith**, any claim, dispute or controversy arising out of, relating to or concerning

8

in any way the Agreement or use of the Website shall be resolved by binding arbitration…" *See* Exhibit 3 to Declaration of Marrelli, (Doc. #16-3), p. 13 (emphasis added). The clause goes on to state that "Smith may elect, in its sole discretion, not to use arbitration for any individual Claim that you properly file and pursue in court." *Id.* The clause further states, "IF ARBITRATION IS CHOSEN BY Smith WITH RESPECT TO A CLAIM, YOU WILL NOT HAVE THE RIGHT TO LITIGATE THE CLAIM IN COURT…" *Id.* (emphasis in original).

The language of the arbitration provision which Defendant asks this Court to enforce is obviously one-sided. Defendant has drafted an arbitration provision which gives it the sole right to force Plaintiff, and any other user of its services, to arbitrate claims which are brought in any lawsuits filed against Defendant. However, if the tables were turned, and Defendant was suing Plaintiff, then Plaintiff would have no right to force Defendant to arbitrate its claims against him. Further, when it is sued, Defendant has given itself the right to decide which claims it wants to submit to arbitration and which claims it wants to litigate in court. This is certainly not the "mutual promise to arbitrate future disputes" which was found to constitute valid consideration in the *Versmesse* case.

Defendant asserts that it in exchange for allegedly accepting its terms of use, Plaintiff was "provided access to exclusive portions of GoSmith's website for service professionals" and "utilized GoSmith's website by viewing and responding to job leads for landscaping services in his designated locale." *See* Defendant's Motion (Doc. #16), p. 9. Defendant therefore claims that it provided adequate consideration to Plaintiff for the arbitration agreement. Defendant statements give the appearance that Plaintiff made extensive use of its website, which is far from the truth. According to Marrelli, Plaintiff only viewed two job leads on Defendant's website, both on the

9

same dates he first visited the website, April 4, 2017. *See* Declaration of Marrelli (Doc. #16-2), par. 11. Defendant provides no evidence that Plaintiff accessed its website after that date.

Plaintiff asserts that he never contacted any job leads provided by Defendant, nor has he used Defendant's services in any way since April 4, 2017. *See* Declaration of Plaintiff, par. 15. Furthermore, at the time he accessed Defendant's website, he had no intention of using any of Defendant's services. The only reason he did so was to try to figure out who kept sending him the unsolicited text messages and how he might be able to get them to stop. *Id.* at par. 9-10. Given the one-sided nature of the arbitration clause, the only consideration which Defendant can claim it gave Plaintiff for the alleged agreement was something he neither wanted nor used.

Due to the lack of consideration provided to Plaintiff by Defendant for the arbitration provision, no contract was formed and the provision is unenforceable.

### C.   **EVEN IF THIS COURT WERE TO FIND THAT A BINDING CONTRACT WAS CREATED BETWEEN THE PARTIES, IT IS INVALIDATED BY ITS UNCONSIONABILITY.**

"An unconscionable contract is unenforceable when it is 'such that no sensible man not under delusion, duress, or in distress would make [it], and such as no honest and fair man would accept [it].' In addition, there must exist a great disparity in bargaining power which led the weaker party to sign the contract unwillingly or unaware of its terms. Indiana law places on the party seeking to enforce the contract the burden of showing 'that the contractual provisions were explained to the other party and came to his knowledge and there was in fact a real and voluntary meeting of the minds.'" *Geiger v. Ryan's Family Steak Houses, Inc.,* 134 F.Supp.2d 985, 997 (S.D. Ind. 2001), quoting *Weaver v. American Oil Co.*, 276 N.E.2d 144, 146 (Ind. 1971).

Under Indiana law "[t]here are two types of unconscionability: substantive and procedural. 'Substantive unconscionability refers to oppressively one-sided and harsh terms of a contract,

while procedural unconscionability involves the manner and process by which the terms become part of the contract.'" *Tuttle v. Sallie Mae, Inc.*, 2014 WL 545379 at *4, No. 1:13-CV-183-JD-RBC (N.D.Ind. February 11, 2014), quoting *DiMizio v. Romo*, 756 N.E.2d 1018, 1023 (Ind.Ct.App. 2001). "Procedural unconscionability issues arise from irregularities in the bargaining process or from characteristics peculiar to one of the parties." *DiMizio*, 756 N.E.2d at 1024. "Procedural unconscionability involves the manner and process by which the terms become part of the contract… Procedural unconscionability most frequently arises in cases characterized by consumer ignorance." *Hahn v. Ford Motor Co., Inc.*, 434 N.E.2d 943, 951 (Ind.Ct.App. 1982).

In this case, both types of unconscionability are present. The arbitration clause Defendant seeks to enforce is substantively unconscionable, as it is both oppressively one-sided and harsh when applied to Plaintiff. As Plaintiff explained in detail above, Defendant holds the sole right to determine which legal claims filed against it in court must instead be brought through arbitration. If Defendant files a lawsuit against a customer or user of its website, by the terms of the arbitration provision, that individual has no right to mandate that the claims be heard through arbitration. That is the very definition of "one-sided."

If enforced, the arbitration provision also renders harsh results for individuals like the Plaintiff herein. After having endured the receipt of unsolicited text messages from Defendant for months, Plaintiff finally decided to follow the links in those messages to see if he could get them to stop. He had no intention of using Defendant's services, nor did he use Defendant's services. *See generally* Declaration of Plaintiff. However, now that he has filed a lawsuit to seek damages for Defendant's invasion of his privacy and violation of Federal law, Defendant seeks to exercise its sole discretion to force his claims into arbitration.

These same circumstances also show the irregularities in the bargaining process and the characteristics peculiar to one of the parties – the Plaintiff herein – which render Defendant's arbitration provision procedurally unconscionable. Simply put, there was no bargaining process. Instead, Plaintiff was lured to Defendant's website by Defendant repeatedly sending illegal, unsolicited text message to him. When he completed the sign-up form on Defendant's website, Plaintiff had no intention whatsoever of using any of Defendant's services. He was only trying to figure out how to get those text messages to stop. *See* Declaration of Plaintiff, par. 10.

In light of the one-sided and harsh terms of the arbitration provision Defendant seeks to enforce, the irregularities in the bargaining process, and the characteristics peculiar to Plaintiff's use of Defendant's website, if this Court finds that a binding agreement was created between the parties, it should also find that agreement is invalidated by its substantive and procedural unconscionability.

### IV. DEFENDANT CANNOT COMPEL ARBITRATION BECAUSE THE CLAIMS IT SEEKS TO ARBITRATE ARE OUTSIDE THE SCOPE OF ITS ARBITRATION CLAUSE.

#### A. WHETHER PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF DEFENDANT'S ARBITRATION CLAUSE IS AN ISSUE TO BE DECIDED BY THIS COURT.

"The determination of whether parties are contractually bound to arbitrate and what issues they are bound to arbitrate are matters to be determined by the court." *Shimkus v. O'Charley's, Inc.*, 2011 WL 3585996 at *2, No. 1:11-CV-122-TLS (N.D.Ind. August 16, 2011), citing *Granite Rock Co. v. Int'l Broth. of Teamsters*, 130 S.Ct. 2847, 2855 (2010) (additional citations omitted). "The parties must have agreed in advance to submit the disputes to arbitration because the arbitration agreement is the source of the arbitrator's authority to resolve those disputes, and a party may not be forced to arbitrate any dispute that the party did not agree to arbitrate." *Id.*, citing

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 106 S.Ct. 1415, 1418 (1986). Thus, if this Court finds that a binding arbitration agreement was created between the parties, the issue of whether Plaintiff's claims fall within the scope of that agreement is one to be decided by this Court. It is not an issue to be decided by an arbitrator, as Defendant suggests.

> **B.   PLAINTIFF'S CLAIMS ARE OUTSIDE THE SCOPE OF DEFENDANT'S ARBITRATION CLAUSE BASED UPON THE TIME AT WHICH THEY AROSE.**

Plaintiff began receiving the unsolicited text messages from Defendant on or about January 15, 2017. *See* Declaration of Plaintiff, par. 3. He did not visit Defendant's website until April 4, 2017. *See* Declaration of Plaintiff, par. 8 and Declaration of Marrelli (Doc. #16-2), par. 9. During the intervening 79 days, Plaintiff received at least 19 unsolicited text messages from Defendant on his cellular telephone, although he believes there were more messages sent during that time. *See* Declaration of Plaintiff, par. 7. Plaintiff has therefore alleged that Defendant violated the TCPA at least 19 times prior to the date Plaintiff first visited Defendant's website. While Plaintiff disputes that he ever validly assented to the terms of use of Defendant's website, Defendant itself admits that there could not have been any agreement with Plaintiff prior to April 4, 2017.

In *Palmer v. Menards*, 2013 WL 3147374, No. 3:12 CV 828 (N.D.Ind. June 17, 2013), this District Court addressed this very issue. "If the events that prompted plaintiff's lawsuit happened prior to the signing of the agreement, plaintiff's claims would not be subject to arbitration." *Id.* at *4. Because the *Palmer* court found nothing to indicate that the arbitration agreement at issue applied retroactively, and because the defendant provided no evidence to show that the agreement was signed prior to the events giving rise to the plaintiff's claims, the defendant's motion to compel arbitration was denied. *Id.* In this case, however, we have the missing evidence which was not present in *Palmer*.

13

The events giving rise to Plaintiff's claims began on or about January 15, 2017. If a binding arbitration agreement was created, which Plaintiff disputes, it was not created until April 4, 2017. Because Plaintiff's claims arose well before any arbitration agreement was allegedly created, his claims are outside the scope of the purported arbitration provision.

A similar conclusion was reached in *Russell v. Citigroup, Inc.*, 748 F.3d 677 (6th Cir. 2014). In *Russell*, the defendant sought to enforce an arbitration agreement that was signed after the events giving rise to the lawsuit. The court noted that the language of the agreement did not state that it covered claims that "arose" (past-tense) or "have arisen" (present-perfect-tense) between the parties. The court therefore found that the contract only governed disputes that begin in the present or future, and arbitration was not compelled. *Id.* at 679.

The language of Defendant's arbitration clause should lead this Court to a similar conclusion. Defendant's Dispute Resolution provision states that it applies to "any claim, dispute or controversy arising out of, relating to or concerning in any way the Agreement or use of the Website…" *See* Doc. #16-3, p. 13. By using verbs in this form, Defendant chose the tense commonly referred to as present participle. According to Merriam-Webster Dictionary, present participle "typically expresses present action in relation to the time expressed by the finite verb in its clause and that in English is formed with the suffix –ing…" *See* https://www.merriam-webster.com/dictionary/present%20participle. Thus, Defendant's choice of the present participle in using the words "arising out of, relating to or concerning" denotes "present action in relation to the time expressed." Defendant could have chosen to include the past-tense forms of these words (e.g. "arose out of") or the present-perfect-tense (e.g. "have arisen out of"), but it did not.

Because Plaintiff's claims arose long before he allegedly agreed to Defendant's terms of use, and because the language of Defendant's arbitration clause does not extend to claims which

14

have already arisen, Plaintiff's claims are outside the scope of the purported arbitration agreement. Even if Plaintiff is found to have agreed to Defendant's terms of use, the claims he has raised in this lawsuit do not fall within the scope of the arbitration provision.

### C. **PLAINTIFF'S CLAIMS ARE OUTSIDE THE SCOPE OF DEFENDANT'S ARBITRATION CLAUSE BASED UPON THE WORDING OF THAT CLAUSE.**

Regardless of the time at which Plaintiff's claims arose, they are still outside the scope of the wording of Defendant's arbitration provision. Said provision only covers a "claim, dispute or controversy arising out of, relating to or concerning in any way **the Agreement or use of the Website**…" *See* Doc. #16-3, p. 13 (emphasis added).

Plaintiff's brought this lawsuit because Defendant violated the TCPA when it sent him numerous, unsolicited text messages without his consent. If this Court finds that Plaintiff did agree to Defendant's terms of use, he did so with no intention whatsoever of using any of Defendant's services. He was merely trying to determine who was sending him these text message and how he might be able to get them to stop. *See* Declaration of Plaintiff, par. 10. Many of those messages were sent prior to the date on which Defendant could even claim that any agreement existed with Plaintiff.

Plaintiff's Complaint does not allege a dispute over the terms of Defendant's services. It does not allege a dispute over the cost of Defendant's services. It does not allege a dispute over the manner in which Defendant provided any services. It does not allege a dispute over Plaintiff's use of Defendant's website. The Complaint also does not allege a dispute over any specific terms of Defendant's Consumer Provider Agreement. It alleges the violation of a Federal statute based upon the sending of unsolicited text messages without Plaintiff's consent. Therefore, the claims

15

Plaintiff has raised in this lawsuit are not within the scope of the arbitration provision and Plaintiff should not be compelled to arbitrate those claims.

## V. BECAUSE PLAINTIFF HAS IDENTIFIED DISPUTED ISSUES OF FACT REGARDING THE EXISTENCE OF AN ARBITRATION AGREEMENT, DEFENDANT'S MOTION SHOULD BE DENIED.

"The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002), citing *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196 (7th Cir. 1987). "[C]ourts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Id.* (citations omitted)

"In deciding whether the party opposing summary judgment (and by analogy compelled arbitration) has identified a genuine issue of material fact for trial, 'the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.'" *Id.*, citing *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2513 (1986). "The question therefore, is…'whether [plaintiff has] produced sufficient evidence to raise a factual issue concerning whether she and [defendant] are bound by a contract to arbitrate.'" *Versmesse v. AT & T Mobility LLC*, 2014 WL 856447 at *4, No. 3:13 CV 171 (N.D.Ind. March 4, 2014), quoting *Tinder*, 305 F.3d at 735.

Plaintiff has provided more than just his own Declaration in support of his position. Defendant claims that Plaintiff checked a box agreeing to the terms of use on its website. Plaintiff has shown that the box is actually pre-checked when one visit's Defendant's website. Plaintiff has also shown that the arbitration clause Defendant seeks to enforce is buried on Defendant's website in a way that makes it difficult for a reasonable person to locate it. Plaintiff has demonstrated a

16

lack of consideration for his alleged agreement to arbitrate disputes and the unconscionability of any such agreement. He has also shown that his claims are outside the scope of Defendant's arbitration provision, by way of the very words Defendant chose to use when drafting it.

In light of the evidence raised by Plaintiff herein, there exists, at the very least, "a triable issue of fact concerning the existence of the [arbitration] agreement." *Tinder*, 305 F.3d at 735. Should this Court believe there is still a question as to whether a binding arbitration agreement exists, the Court should follow the "roadmap" suggested by Defendant in its Motion. *See* Doc. #16, p. 14.

> [I]f the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions."

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3rd Cir. 2013), citing *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 482 (E.D.Pa. 2011), quoting 9 U.S.C. § 4.

While Plaintiff believes he has presented enough evidence and authority herein for this Court to deny Defendant's Motion with prejudice, should the Court believe that a question of fact exists, Plaintiff requests that the Court deny Defendant's motion, grant the parties the opportunity to conduct discovery on the issue and set this matter for a trial regarding "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same." 9 U.S.C. § 4.

## VI.   **IF THE COURT FINDS DEFENDANT'S MOTION WELL-TAKEN, THIS MATTER SHOULD BE STAYED AND NOT DISMISSED.**

Defendant's request that the Court dismiss this case is contrary to the wording of the statute Defendant seeks to enforce, the FAA. The FAA clearly states that if "the court in which such suit is pending [is] satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties **stay the trial of the action until such arbitration has been had** in accordance with the terms of the agreement…" 9 U.S.C. § 3 (emphasis added). This allows the Court to retain jurisdiction over the case to later vacate, modify or correct the award of the arbitrator(s) if the circumstances dictate such action is appropriate. *See* 9 U.S.C. §§ 10-11.

While Plaintiff contends he should be allowed to continue to litigate this matter before the Court, should the Court believe Plaintiff's claims should be arbitrated, Plaintiff requests the Court stay this action pending the outcome of the arbitration, rather than dismiss this matter as Defendant has requested.

## VII.   **CONCLUSION**

Plaintiff has provided the Court with several reasons why Defendant's Motion to Compel Arbitration should be denied. No binding agreement to arbitrate was created between Plaintiff and Defendant due to a lack of a meeting of the minds, a lack of mutual assent to the terms of the agreement, and a lack of consideration provided to Plaintiff by Defendant for the arbitration agreement.

Even if the Court finds that a binding agreement was created, that agreement must be invalidated, as it is both substantively and procedurally unconscionable. Furthermore, the claims Plaintiff brought in this lawsuit are outside the scope of Defendant's arbitration provision, as they

arose long before any such agreement may have been created, and by the wording of the arbitration provision itself.

At the very least, Plaintiff has demonstrated the existence of a triable issue of fact concerning the existence of the arbitration agreement, which would allow the parties to conduct discovery related to the agreement and present evidence at a trial on those issues. For the foregoing reasons, Defendant's Motion to Compel Arbitration must be denied.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter an order denying Defendant's Motion to Compel Arbitration with prejudice, and granting such other relief as the Court deems appropriate under the circumstances.

RESPECTFULLY SUBMITTED,

WILLIAM ROJAS

By: /s/ David B. Levin
Attorney for Plaintiff
Illinois Attorney No. 6212141
Admitted to Practice in Northern District of Indiana
Law Offices of Todd M. Friedman, P.C.
111 West Jackson Blvd., Suite 1700
Chicago, IL 60604
Phone: (312) 212-4355
Fax: (866) 633-0228
dlevin@toddflaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 8, 2017, a copy of the foregoing Response to Defendant's Motion to Compel Arbitration and Dismiss or Stay Proceedings was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ David B. Levin
Attorney for Plaintiff
