**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| WILLIAM ROJAS, ) <br> ) <br>       **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> GOSMITH, INC. and DOES 1-20, ) <br> ) <br>       **Defendants.** ) <br> ) <br> ) | **CIVIL ACTION NO.** <br> **2:17-cv-00281-JVB-JEM** |

**DEFENDANT GOSMITH, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION**

**TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS**

I.      **INTRODUCTION**

Plaintiff's opposition challenges nearly every aspect of the Arbitration Agreement contained in the GoSmith Terms of Use, including its formation, enforceability, and applicability to Plaintiff's claims. Plaintiff's arguments are insufficient to avoid his contractual obligation to arbitrate his claims, as a matter of law.

First, Plaintiff claims GoSmith did not provide him with reasonable notice of its Terms of Use, and the Arbitration Agreement contained therein, because the box by which users accept or reject the Terms of Use was "pre-checked", and notice of the Terms of Use appeared in small or light font. But Plaintiff admits that he saw the box, recognized that it was checked, and moved forward with the transaction anyway. It is beyond dispute that Plaintiff was, therefore, subjectively aware of his acceptance of the Terms of Use at the time he manifested his assent by completing his registration and clicking "See Job Matches." His decision not to read those terms—if that is what happened—does not render the Arbitration Agreement unenforceable. And the case law contains no requirement that acceptance of a "clickwrap" arbitration agreement must include an affirmative checking of a box; a failure to reject or opt out of an agreement (versus opting "in") is treated under the law as a manifestation of assent.

Plaintiff next claims that the Arbitration Agreement is unenforceable for lack of consideration. However, Plaintiff concedes that he received a benefit in exchange for the promises he made in the Terms of Use containing the Arbitration Agreement. While he disputes the value of that benefit, it matters not. Indiana courts—like those throughout the country—inquire only as to the existence of consideration, not its adequacy. And it is black-letter law that an Arbitration Agreement need not be supported by separate consideration; so long as the underlying contract is supported by consideration the agreement to arbitrate is binding.

Finally, Plaintiff challenges the enforceability and/or applicability of the Arbitration Agreement, but these gateway issues of arbitrability were delegated by the parties to the arbitrator. Even assuming these issues are appropriately decided by the Court, Plaintiff has failed to rebut the presumption in favor of arbitrability created by the broadly worded Arbitration Agreement and public policy. The Court should therefore grant GoSmith's motion.

## II. PLAINTIFF HAS FAILED TO ESTABLISH A BASIS FOR DISPUTING THE FORMATION OF A BINDING CONTRACT

Plaintiff argues that no binding contract was formed between Plaintiff and GoSmith based on four allegations: (1) the box next to the acknowledgement on GoSmith's sign-up screen was checked by default when he navigated on the page; (2) GoSmith did not provide reasonable notice of its Terms of Use; (3) Plaintiff never "intended" to accept GoSmith's Terms of Use, or utilize its services; and (4) the Arbitration Agreement is not supported by consideration. Each argument fails to refute the existence of a binding contract between Plaintiff and GoSmith.

### A. A "Pre-Checked" Box Adopting Terms That are Otherwise Disclosed and Affirmatively Accepted Creates a Binding Agreement

Plaintiff argues that no binding contract was formed because the box next to the notice and acknowledgment of GoSmith's Terms of Use was "pre-checked". Opposition, p. 5. But Plaintiff is wrong. In determining whether a binding contract is created online, courts apply "general contract principals." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). "Formation of a contract requires mutual assent in virtually all jurisdictions." *Ibid*. "Illinois courts use an objective approach to that question," which examines "outward expressions such as words and acts." *Ibid*. So do courts in Indiana. *Nationwide Ins. Co. v. Heck*, 873 N.E.2d 190, 196 (Ind. Ct. App. 2007). And this objective approach applies to online transactions, because a "clearly labeled hyperlink to the agreement, next to an "I Accept" button that unambiguously pertains to that agreement," is a sufficient device to capture assent online.

2

*Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016).  The appellate court made no distinction between a button that is checked or unchecked by default.  *Ibid*.

Whichever way the box is analyzed – checked by default or unchecked by default – the device still provides a web user with the ability to accept or decline contract terms, and clearly accepting those terms is a manifestation of consent. *Johnson v. Harvest Mgmt. Sub TRS Corp.*, No. 3:15-cv-00026-RLY-WGH, 2015 U.S. Dist. LEXIS 129969, at *9 (S.D. Ind. 2015)("Assent may be expressed by acts which manifest acceptance.")  A failure to opt out of an agreement is regarded under the law as a "manifestation of intent to accept the terms of the contract." *Winters v. AT&T Mobility Servs., LLC*, No. 4:17-cv-04053-SLD-JEH, 2017 U.S. Dist. LEXIS 105804, at *13 (C.D. Ill. Jul. 2017) (citing to *Taylor v. Dollar Tree*, No. 3:16-CV-2-TLS, 2016 U.S. Dist. LEXIS 152340 (N.D. Ind.  2016)).  "Although [a] contract require[s] signatories to 'opt out' rather than, as is traditionally done with contracts, [opt] in, such a device is no impediment to the creation of a valid contract, even though it is plainly crafted to channel more [users] into arbitration." *Winters*, supra.  So by moving forward with the online transaction after noticing the box Plaintiff assuredly manifested his assent; his decision not to uncheck the box is dispositive.

*Winters* involved an electronic standalone arbitration agreement.  There, AT&T sent its employees an arbitration agreement through an e-mail blast.  *Id*. at *8.  It did not require the employees to take any action to accept the agreement.  Instead, it provided a multi-step process through which employees could opt out of the agreement.  *Id*. at **8-9.  First, the employee had to open the e-mail containing the notice of the arbitration agreement.  *Ibid*.  They then had to click on a link in the e-mail which took them to a page on the AT&T intranet with a copy of the arbitration agreement.  *Ibid*.  From there, the employee had to click on yet another link which took them to a page where they could "register" their opt out.  *Ibid*.  The court applied the

Seventh Circuit's holding in *Sgorous*, and found that AT&T had provided sufficient notice of the arbitration agreement; the employee's failure to take the steps necessary to opt out constituted assent to the arbitration agreement. *Id*. at \*\*7-8, 13-14; see also *Johnson*, supra at \*\*9-10.

Translated to this case, GoSmith's online registration process plainly yielded a binding arbitration provision. Indeed, GoSmith provided a far easier and more conspicuous means for Plaintiff to decline GoSmith's Terms of Use. There is no multi-step process. All Plaintiff had to do was uncheck the box at the bottom of the one-page registration screen – *a box which in fact Plaintiff admits to seeing when he registered*. Declaration of William Rojas in Support of Plaintiff's Response to Defendant's Motion to Compel Arbitration and Dismiss or Stay Proceedings (Doc. 18-1) ("Rojas Dec."), ¶ 14. Plaintiff's inaction is treated under the law as an manifestation of assent to the GoSmith Terms of Use, so a contract was formed. *Winters*, supra.

  **B.** <u>GoSmith Provided Reasonable Notice of the Terms of Use</u>

As Plaintiff recognizes, a contract created online is binding so long as "the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and . . . the circumstances support the assumption that the purchaser receives reasonable notice of those terms." Opposition, p. 6 (citing to *Sgouros*, 817 F.3d at 1034). Plaintiff argues that GoSmith did not provide reasonable notice of the Terms of Use because the notice and acknowledgment of the Terms of Use, which is set forth immediately below the "See Job Matches" button, was not sufficiently conspicuous. Opposition, pp. 6-7. He points to the fact the text is smaller and lighter than the rest of the text on the page, and speculates that it is therefore "possible that a user could complete [registration], without ever realizing the pre-checked box and the statement below it." Opposition, p. 6.

4

Plaintiff's speculation that some other user might miss the Terms of Use is irrelevant to the question of whether *this* user (e.g. Plaintiff) received reasonable notice of those terms.  By his sworn declaration Plaintiff recounts that "[a]t the time [he] visited Defendant's website, the small box below the large button which said 'See Job Matches' was already checked."  Rojas Dec., ¶ 14.  Thus, given Plaintiff's present recollection of noticing the checked box on the screen "at the time [he] visited" GoSmith's website and registered, the box and the statement right next to it that "I have read and agree to the terms & privacy policy" was obviously and conclusively conspicuous enough for him to have noticed it during the registration process.

Even if Plaintiff's admission is disregarded, the design and layout of the GoSmith registration screen provides users with reasonable notice that by clicking through to register, they are agreeing to GoSmith's Terms of Use.  As a starting point, the design of the registration page is minimalistic.  Declaration of Brenton Marrelli in Support of Defendant GoSmith, Inc.'s Motion to Compel Arbitration (Doc. 16-2) ("Marrelli Dec."), Ex. B.  There are about eight fields of text displayed on the screen, one of which includes the notice and acknowledgement of the Terms of Use.  This part of the registration page therefore occupies a substantial portion of the total contents displayed on the screen, is clearly visible, and in no way hidden or obscured.

Additionally, by definition the font used in the notice and acknowledgment was not so small or light that Plaintiff missed seeing it.  The color of the text contrasts with the background, and remains perfectly visible.  *Ibid.*  The user's attention is also called to the hyperlink to the Terms of Use with blue contrasting text.  See *PDC Labs., Inc. v. Hach Co.*, No. 09-1110, 2009 U.S. Dist. LEXIS 75378, at *8 (C.D. Ill. 2009) (hyperlink to terms in "underlined, blue, contrasting text," was "sufficient to be considered conspicuous."); *Hubbert v. Dell Corp.*, 359 Ill.App.3d 976, 983 (Ill. Ct. App. 2005) ("A person using a computer quickly learns that more

4844-5980-2959\1

information is available by clicking on a blue hyperlink.")  Once a user clicks on the terms hyperlink, they are taken to a full copy of the GoSmith Terms of Use, which conspicuously states on the first page under the bold heading "Acknowledgement and Acceptance" that their use of GoSmith's website or services constitutes their agreement to the Terms of Use.  See Terms of Use attached to the Marrelli Dec. as Ex. A, at p. 1 ("Terms of Use"); Marrelli Dec., ¶ 7, Ex. B.  Thus, GoSmith provides reasonable notice to users that by clicking through to register for an account they are assenting to its Terms of Use.  *Sgouros*, supra at 1036.

Plaintiff next complains that the Arbitration Agreement is not conspicuous because it is "buried" amongst 11 pages of other contract terms.  Opposition, p.7.  However, an arbitration agreement is not "buried" if it appears in the same font as the other text of the contract, as is the case here.  Terms of Use, attached to the Marrelli Dec. as Ex. A, at p. 12;  *see Twist v. Arbusto*, No. 4:05-cv-0187-JDT-WGH, 2006 U.S. Dist. LEXIS 36533, at *26 (S.D. Ind. 2006) (arbitration provision "not buried or hidden," where it "appear[s] in the same font as the other text of the Agreements[.]); *Henderson v. U.S. Patent Comm'n*, No. 15 C 3897, 2015 U.S. Dist. LEXIS 147813, at *12 (N.D. Ill. 2015) (same).  Moreover, the Arbitration Agreement is further distinguished from other terms with a header in bold font and capital letters which states "**DISPUTE RESOLUTION**", and the portion of the text describing the consequences of agreeing to arbitrate is in all capital letters.  *See* Terms of Use, attached to the Marrelli Dec. as Ex. A, at  p. 12  ("IF ARBITRATION IS CHOSEN BY Smith WITH RESPECT TO A CLAIM, YOU WILL NOT HAVE THE RIGHT TO LITIGATE THE CLAIM IN COURT. . ."); *Tory v. First Premier Bank*, No. 10 C 7326, 2011 U.S. Dist. LEXIS 110126, at **10-11 (N.D. Ill. 2011) (arbitration provision made "relatively noticeable," with use of "bold typeface," and "all capital letters.").  Thus, the Arbitration Agreement itself was also relatively noticeable.

Finally, Plaintiff's failure to read the Terms of Use is not a "get out of jail free card." *DeJohn v. .TV Corp. Int'l*, 245 F. Supp. 2d 913, 919 (N.D. Ill. 2003). So long as reasonable notice of the Terms of Use was provided – which it was – Plaintiff is "presumed to know its terms." *MicroMetl Corp. v. TranzAct Techs., Inc.*, No. 1:08-cv-0321-LJM-WTL, 2008 U.S. Dist. LEXIS 44736, at *12 (S.D. Ind. 2008).

### C. **Plaintiff's Subjective Intent is Irrelevant for Purposes of Determining Whether There is a Binding Contract**

Plaintiff also attacks the formation of a contract contending that there was no "meeting of the minds" between the parties due to his own subjective intent to never use GoSmith's services. Opposition, pp. 4-5. Whatever Plaintiff's secret motivations might have been for signing up for his account, however, he plainly assented to clear and objective contractual terms by doing so.

"When an agreement is evidenced by a written instrument, courts look to that document to determine the parties' intent, and whether a meeting of the minds occurred. When doing so, courts do not look for the parties' *hidden intentions*, but instead examine the final expression of the parties' intent from the written agreement." *Cindy (dini) Degroff v. Mascotech Forming Techs.-Fort Wayne*, 179 F. Supp. 2d 896, 903 (N.D. Ind. 2001) (italics supplied); see also *Flynn v. AerChem, Inc.*, 102 F. Supp. 2d 1055, 1059 (S.D. Ind. 2000). One court put it more plainly: "[s]ecret hopes and wishes count for nothing." *Kaminski v. Thomas J. Wiens & Transnet Capital Corp.*, No. 10 C 4322, 2016 U.S. Dist. LEXIS 121669, at *5 (N.D. Ill. 2016). "The words on the page manifest the parties' intent as to their agreement." *Arlington Devco v. T10 Meltel, LLC*, No. 15 C 3558, 2017 U.S. Dist. LEXIS 26574, at *9 (N.D. Ill. Feb. 2017).

Hence, the fact that Plaintiff claims he secretly did not "intend" to use GoSmith's services, but supposedly only signed up for an account to "try to figure out who was sending him the unsolicited text messages and how he might be able to get them to stop," is neither relevant

7

to the issue of contract formation, nor sufficient to rebut the existence of a binding contract. Opposition, p. 4.  The parties' intent appears within the four corners of the Terms of Use.  The terms were offered and accepted and manifested through a clear act of assent.  So a binding contract was formed and its terms are what governs the parties now. *Kaminski*, 2016 U.S. Dist. LEXIS 121669, at *5; *Arlington Devco*, 2017 U.S. Dist. LEXIS 26574, at *9.

### D.  The Contract Between Plaintiff and GoSmith is Supported by Consideration

Plaintiff argues that the Arbitration Agreement is not supported by legal consideration because it is "one-sided".  Opposition, pp. 8-9.  "A mutual promise to arbitrate, however, is not required for an enforceable arbitration agreement if the agreement is supported by other consideration."  *Martinez v. Utilimap Corp.*, No. 3:14-cv-310-JPG-DGW, 2015 U.S. Dist. LEXIS 82880, at *17 (S.D. Ill. 2015); *Felland v. Clifton*, No. 10-cv-664-slc, 2013 U.S. Dist. LEXIS 100197, at *21-23 (W.D. Wis. 2013) ("Most federal courts considering the issue in the context of arbitration agreements do not require such agreements to contain identical obligations.").  Importantly, arbitration provisions do not require separate consideration so long as they are part of an underlying contractual agreement supported by consideration.  *See Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 808 (7th Cir. 2003); *Felland*, supra (collecting cases); *Estep v. World Fin. Corp.*, 735 F. Supp. 2d 1028, 1033 (C.D. Ill. 2010) (holding that no separate consideration for arbitration agreement is required).

As demonstrated in GoSmith's Motion, Plaintiff's acceptance of the Terms of Use containing the Arbitration Agreement was supported by consideration.  It is incontrovertible that, in exchange for his promises under the Terms of Use, Plaintiff was (a) provided access to exclusive portions of GoSmith's website provided to service professionals; and (b) provided job leads that were tailored to Plaintiff's trade and geographic area.  Marrelli Dec., ¶¶9-11.

8

Plaintiff claims this was not *adequate* consideration because he secretly neither "wanted nor used," the job leads he was provided. Opposition, p. 10. Yet these job leads are exactly what he requested from GoSmith when registering on its website and clicking the "See More Job Matches" button. Plaintiff does not dispute that he took affirmative action on the GoSmith website to request job leads, and he was provided this benefit exchange for the promises he made in the Terms of Use. Rojas Dec., ¶ 10 ("I did complete the sign-up form on Defendant's website…"); Marrelli Dec., ¶¶ 10-11. "[T]he law does not inquire into the adequacy of the consideration to support a promise, only its existence." *Curtis 1000 v. Suess*, 24 F.3d 941, 945 (7th Cir. 1994); *Kreimer v. Delta Faucet Co.*, No. IP 99-C-1507-T/G, 2000 U.S. Dist. LEXIS 9610, at *6 (S.D. Ind. 2000). And here, Plaintiff does not deny the basis for finding adequate consideration. In fact, Plaintiff does not dispute in his Opposition that he received and viewed customized job leads provided to him by GoSmith after he registered and accepted the GoSmith Terms of Use. Opposition, p. 9-10. The Terms of Use is therefore supported by consideration, and it follows as a matter of law that the Arbitration Agreement contained in this binding contract is as well. *Hawkins*, supra.

## III.     ALL REMAINING DISPUTES OVER ARBITRABILITY SHOULD BE DECIDED BY THE ARBITRATOR

Plaintiff cannot refute the existence of a binding Arbitration Agreement between himself and GoSmith. As such, any remaining arguments concerning the enforceability and applicability of the Agreement must be decided by the arbitrator. See Motion, pp. 12-13. Plaintiff disagrees with GoSmith's position in his opposition, but offers no authority or explanation to the contrary. Opposition, pp. 12-13. So the Court should order the remaining issues to be considered by the arbitrator, including Plaintiff's challenge that the Terms of Use are unconscionable and do not encompass the dispute presented here. See *Kemph v. Reddam*, No. 13 CV 6785, 2015 U.S. Dist.

9

LEXIS 38861, at *11 (N.D. Ill. 2015) (arbitrator to decide whether dispute within scope of clause and unconscionability) (citing to *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68—69 (2010)).

**IV.    IF THE COURT ELECTS TO DETERMINE THE REMAINING ISSUES RELATED TO ARBITRABILITY PLAINTIFF'S POSITIONS LACK MERIT**

The following section assumes, for the sake of argument only, that the Court has elected not to defer consideration of Plaintiff's gateway issues regarding arbitrability of issues in favor of the arbitrator. For those purposes only, GoSmith offers the following response to Plaintiff's contentions regarding unconscionability and the scope of the arbitration agreement.

**A.  The Arbitration Agreement is Not Unconscionable**

Plaintiff recycles the points addressed above in arguing that the Arbitration Agreement is both procedurally and substantively unconscionable. He is able to establish neither.

1.  The Arbitration Agreement is not Procedurally Unconscionable

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777-78 (7th Cir. 2014). In determining whether an agreement is procedurally unconscionable, courts will examine factors such as "whether important terms were hidden in a maze of fine print, and all of the circumstances surrounding the formation of the contract." *Ibid*.

Many of these considerations are the same or similar to the ones courts within the Seventh Circuit examine in determining whether a website provides reasonable notice of the terms of an online agreement. *See Sgouros*, 817 F.3d at 1036. As discussed above, GoSmith's website provides users with reasonable notice of both the GoSmith Terms of Use, and the Arbitration Agreement contained therein. Hence, and for these same reasons, Plaintiff cannot establish that the Arbitration Agreement was procedurally unconscionable.

Plaintiff appears to argue that the Arbitration Agreement is procedurally unconscionable because he was "lured" to GoSmith's website and secretly "had no intention whatsoever," of using GoSmith's services when he registered for an account. Opposition, p. 12. But he does not deny registering. Rojas Dec., ¶ 10. And he took these actions of his own free will, and with reasonable notice that these actions would bind him to GoSmith's Terms of Use. Additionally, Plaintiff cites to no authority to support his argument that his hidden intent in taking those actions somehow establishes procedural unconscionability (or that it is even relevant to the question). It does and is not. Plaintiff's alleged but unexpressed intentions are irrelevant in determining whether there is a binding contract between Plaintiff and GoSmith. The lack of any evidence or authority that would create an issue over whether the Arbitration Agreement is procedurally unconscionable is dispositive of this argument.

2. The Arbitration Agreement is Not Substantively Unconscionable

Substantive unconscionability "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Jackson*, supra.

Similar to his challenge to legal consideration, Plaintiff argues that the Arbitration Agreement is substantively unconscionable because it is "one-sided". Opposition, p. 11. "However, a contract is not unenforceable merely because one party enjoys an advantage over the other." *Feltner v. Bluegreen Corp.*, No. IP 02-0873-C-M/ S, 2002 U.S. Dist. LEXIS 20449, at *15 (S.D. Ind. 2002). Moreover, while the Arbitration Agreement provides GoSmith with the option to elect arbitration, it explicitly provides that both parties are bound by the arbitrator's

11

decision, and as set forth above, is contained in a contract supported by independent consideration.  Terms of Use, p. 12.  For these additional reasons, the mere fact that Plaintiff now claims for the first time that the Arbitration Agreement is "one-sided" does not establish substantive unconscionability.  See *Morgan v. Bill Kay Chrysler Plymouth*, Case No. 01 C 3871, 2002 U.S. Dist. LEXIS 18460, at *12 (N.D. Ill. 2002) (even though arbitration agreement did not obligate defendant to arbitrate claims, it was not unconscionable because it was contained in a contract supported by consideration, and "explicitly provides that both parties are bound by an arbitrator's decision."); see also *Estep*. 735 F. Supp. 2d at 1033 ("where other valid consideration is present, a mutual promise to arbitrate need not be an equal promise.").

Next, Plaintiff argues that the Arbitration Agreement "renders harsh results," because it "force[s] his claims into arbitration."  Opposition, p. 11.  However, "a mandatory arbitration agreement is not *per se* unconscionable," as Plaintiff suggests.  *Cerna v. Prestress Servs. Indus. LLC*, No. 1:10-cv-188, 2011 U.S. Dist. LEXIS 53527, at *15 (N.D. Ind. 2011).  Plaintiff does not point to any other aspect of the Arbitration Agreement that would otherwise "render[] harsh results."  Indeed, it is the law of the land that arbitration is a *favorable* means by which to resolve disputes. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). So Plaintiff has matters backward – the fact that he is required under the Arbitration Agreement to arbitrate his claims effects a benefit in the eyes of the law, not a hardship.

For these reasons, Plaintiff has failed to establish that the Arbitration Agreement is unenforceable due to either procedural or substantive unconscionability.

  **B. The Broad Scope of the Arbitration Agreement Encompasses All of Plaintiff's Claims**

Plaintiff disputes the applicability of the Arbitration Agreement to his TCPA claims on two grounds.  First, he claims the Arbitration Agreement does not apply retroactively to claims

12

relating to 19 out of 73 text messages allegedly sent by GoSmith prior to the April 4, 2017 date of the Arbitration Agreement.  Opposition, pp. 13-14; Complaint, ¶19. [1]  Second, he claims that in any event, the Arbitration Agreement does not apply to his TPCA claims because the text messages at issue do not relate to GoSmith's services.  Plaintiff is mistaken on both points.

### 1. The Arbitration Agreement Applies Retroactively

Courts have consistently held that arbitration clauses apply retroactively where the clause broadly applies to any claims "arising out of," or "relating to," the parties' contract, or the services provided by the defendant.  *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008); *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999); see also *Alwert v. Cox Communs., Inc. (In re Cox Enters., Inc. Set-Top Cable TV Box Antitrust Litig.)*, 835 F.3d 1195, 1201-02 (10th Cir. 2016).   It is only with "the most forceful evidence," that a party challenging arbitration may rebut the presumption of arbitrability created by such language.  *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).  Plaintiff has not introduced such "forceful evidence" in his opposition.

In arguing the Arbitration Agreement does not apply retroactively, Plaintiff relies on two cases in which far narrower arbitration clauses were held not to apply retroactively.  Opposition, pp. 13-14.  Both cases are distinguishable.  *Palmer v. Menards*, No. 3:12 CV 828, 2013 U.S. Dist. LEXIS 85744, at *3 (N.D. Ind. 2013) involved an arbitration clause contained in an employment agreement which narrowly applied to "disputes experienced within my work area." *Id*. at **2-3.  The court found there was nothing in this narrow arbitration clause "to indicate that

---

[1] Even assuming the Arbitration Agreement does not cover these 19 text messages, it still applies to all other texts sent on or after April 4, 2017, and any such non-arbitrable claims should be stayed pending the resolution of Plaintiff's arbitrable claims for the sake of judicial economy and in furtherance of federal policy in favor of arbitration.  *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011).  GoSmith will bring on such a motion to stay if necessary.

13

the agreement applies retroactively," and it therefore did not apply to claims relating to events that occurred prior to employment. *Id.* at *11. As discussed above, that is not the case here.

In *Russell v. Citigroup, Inc.*, 748 F.3d 677, 680 (6th Cir. 2014), the other case cited, the Court held that a narrower arbitration clause that required arbitration of "all employment-related disputes . . . [that] arise between you and Citi," did not apply to litigation that was *already pending* between the parties when the arbitration agreement was formed. *Id.* at 679-680. The Tenth Circuit in *Alwert v. Cox Communs., Inc.*, 835 F.3d 1195, 1202 (10th Cir. 2016) observed that this was "extrinsic evidence . . . that could well be the sort of 'forceful evidence' of the parties' intent that can overcome the presumption in favor of arbitrability: The plaintiff employee had already sued the defendant employer when he signed the arbitration agreement."

No such circumstances exist here and the Arbitration Agreement is not limited to claims that merely "arise" between Plaintiff and GoSmith, but includes any claims "arising out of, relating to or concerning in any way," the Terms of Use, the GoSmith website, and/or its services. Terms of Use, attached to the Marrelli Dec. as Ex. A, at p. 12. As such, even if some of Plaintiff's claims in part concern text messages sent prior to the formation of the Arbitration Agreement, they are still covered by the Agreement so long as they "merely 'touch matters' covered by the arbitration clause [with] all doubts . . . resolved in favor of arbitrability." *Scan Top Enter. Co., Ltd. v. Winplus N. Am., Inc.*, No. 14 C 7505, 2016 U.S. Dist. LEXIS 30675, at *11 (N.D. Ill. 2016). As discussed below, they do.

   2. The Arbitration Agreement Applies to Plaintiff's TCPA Claims

Plaintiff does not dispute or otherwise argue that the Arbitration Agreement broadly applies to any claims arising out of either the Terms of Use, or GoSmith's services. Opposition,

14

4844-5980-2959\1

p. 15.  Plaintiff concedes the point, but nonetheless argues that the text messages sent by GoSmith do not relate or arise out of those services.  *Ibid*.  He is, of course, wrong.

Plaintiff is required to arbitrate any claim "arising out of, relating to, or concerning in any way the Agreement or use of the Website."  Terms of Use, attached to the Marrelli Dec., as Ex. A, at p. 12.  The Arbitration Agreement also specifically delineates the services provided by GoSmith, which include notifying service providers of a homeowner's request for bids on a home improvement project.  Terms of Use, attached to the Marrelli Dec., as Ex. A, at p. 2.  As detailed in the Declaration of Brenton Marrelli filed in support of the Motion, GoSmith communicates these job notifications to contractors such as Plaintiff through text messages and other means.  Marrelli Dec., ¶ 4.  Because these texts are sent in connection with the services provided by GoSmith, they "touch matters" relating to the Arbitration Agreement, and Plaintiff's TCPA claims relating to those texts fall within the scope of the Arbitration Agreement.  *Scan Top*, supra.  And should there be any doubt that this is the case, it should be resolved in favor of arbitration.  *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 54 (7th Cir. 1995).

## V.    CONCLUSION

For the reasons discussed above and in the Motion, Plaintiff has failed to either refute the existence of a binding, enforceable arbitration agreement, or otherwise rebut the presumption of the arbitrability of his claims.  Accordingly, the Court should grant GoSmith's Motion to Compel Arbitration and Dismiss or Stay Proceedings.  If for any reason the Court finds that arbitration cannot be compelled at this time, both parties agree that the Third Circuit's decision in *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d. Cir. 2013) provides an ideal roadmap for resolving any triable factual disputes over arbitrability, and should be followed in this case.

Respectfully submitted,

Dated this 15th day of September, 2017.	DORSEY & WHITNEY LLP

*/s/ Eric J. Troutman*
Eric J. Troutman * (CA Bar No. 229263)
Artin Betpera * (CA Bar No. 244477)

600 Anton Boulevard, Suite 2000
Costa Mesa, California 92626
Telephone: (714) 800-1421
Facsimile: (714) 800-1499
betpera.artin@dorsey.com

* Admitted Pro Hac Vice

Attorneys for Defendant
GOSMITH, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 15th day of September, 2017, I have served a copy of the foregoing document on the following by Notice of Electronic Filing or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, facsimile or e-mail:

David B. Levin, Esq.
Law Offices of Todd M. Friedman
111 West Jackson Blvd., Suite 1700
Chicago, IL  60603
Email:  dlevin@toddflaw.com

Andrew Heidarpour
Heidarpour Law Firm, PLLC
1300 Pennsylvania Ave. NW
Washington, D.C.  20004
Email: AHeidarpour@HLFirm.com

This 15th day of September, 2017.

*/s/ Eric J. Troutman*
Eric J. Troutman