UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| WILLIAM ROJAS, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 2:17-CV-281-JVB-JEM |
| | ) |
| GOSMITH, INC. | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

This matter is before the Court on Defendant GoSmith, Inc.'s Motion to Compel Arbitration and Dismiss or Stay Proceedings [DE 16] filed on August 25, 2017. Plaintiff William Rojas filed a response on September 8, 2017, and Defendant filed a reply on September 15, 2017. Defendant filed notices of supplemental authority on December 14, 2017, and February 4, 2019.

Plaintiff alleges that Defendant sent at least 73 text messages to Plaintiff that violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.* Plaintiff brings the action on behalf of himself and all others similarly situated. Defendant asserts that Plaintiff must submit his claims individually to binding arbitration.

## **LEGAL STANDARD**

The question of whether parties have agreed to submit a particular dispute to arbitration is typically a question for the court to resolve. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Id.* Supreme Court precedents

> hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, "the court" must resolve the disagreement.

*Id.* at 299-300 (citation omitted).

"To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006).

> The [Federal Arbitration Act] does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet. But courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists.

*Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). "Whether a binding arbitration agreement exists is determined under principles of state contract law." *Id.* at 734 (citing 9 U.S.C. § 2; *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). A contract under Indiana law[1] is formed when there is "[a]n offer, acceptance, consideration, and a manifestation of mutual assent establish the existence of a contract." *Indiana Dep't of Corr. v. Swanson Servs. Corp.*, 820 N.E.2d 733, 737 (Ind. Ct. App. 2005) (quoting *Rodziewicz v. Waffco Heavy Duty Towing*, 763 N.E.2d 491, 493 (Ind. Ct. App. 2002)). Contract defenses, such as fraud, duress, or unconscionability, can be applied to invalidate otherwise valid arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

## ANALYSIS

Defendant has asserted that a valid arbitration agreement exists and covers Plaintiff's claims. Plaintiff counters that there was no meeting of the minds and no consideration for the agreement. Plaintiff also argues that, even if a valid agreement would otherwise exist, the agreement should be invalidated for unconscionability. Further, Plaintiff maintains that, even if

---

[1] By inference, both parties agree that Indiana law applies. *See* (Mot. 7, ECF No. 16 ("Under Indiana law, the court determines whether an arbitration agreement exists as it would do if evaluating any other purported contract.")); (Resp. 3, ECF No. 18 ("Indiana courts apply ordinary contract principles to arbitration agreements.")).

2

the agreement is a valid, enforceable contract, the dispute here is outside of the scope of that agreement due to its timing and scope.

The arbitration clause at issue states, in part:

> At the sole option of Smith, any claim, dispute or controversy arising out of, relating to or concerning in any way the Agreement or use of the Website shall be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its commercial arbitration rules. The decisions of the arbitrators shall be binding and conclusive upon all parties involved, and judgment upon any arbitration award may be entered by any court having competent jurisdiction. . . . Smith may elect, in its sole discretion, not to use arbitration for any individual Claim that you properly file and pursue in court.

(Smith Consumer Provider Agreement[2] 13, ECF No. 16-3).[3] The Agreement was accessible from Defendant's account sign-up webpage by clicking the word "terms" in the text "I have read and agree to the terms & privacy policy" that was adjacent to a check box near the bottom of the webpage underneath a "SIGN UP" or "See Job Matches" button.[4] *See* (Mot. Ex. B. ECF No. 16-4); (Resp. Ex. A to Levin Decl., ECF No. 18-3).

### A. Acceptance

Defendant states that "[b]efore Plaintiff could complete the registration process and access job postings on GoSmith's website, he was required, at the bottom of the registration, page to check that he read and agreed to GoSmith's terms and its privacy policy." (Mot Compel 3, ECF No. 16 (citing Marrelli Aff. ¶¶ 8-9, ECF No. 16-2)). However, Plaintiff counters that the check

---

[2] The parties do not contest that this is the correct agreement, but the Court notes that the document is directed toward those who would seek quotes for trades and services from service providers and is not directed toward the service providers themselves. *See* (Smith Consumer Provider Agreement 2, ECF No. 16-3 ("Smith provides consumers (collectively, "Consumers" and individually, "Consumer" or "you") an online venue to solicit quotes for trades and services from service providers and professionals . . . .")).

[3] The document does not bear its own pagination. The Court uses the page number assigned by the Court's CM/ECF system.

[4] Because Plaintiff verifies in his affidavit that the button he clicked was "See Job Matches," the Court accepts that as true for the purpose of ruling on the instant motion. (Pl.'s Aff. ¶ 14, ECF No. 18-1).

box was pre-checked, meaning that he was not required to take any affirmative action to indicate acceptance of the terms when creating his account. In support, Plaintiff cites his own affidavit and two screenshots of Defendant's sign-up webpage (one provided by Defendant and one provided by Plaintiff) in which the box to accept the terms is checked. Plaintiff's counsel testifies in an affidavit that the acceptance box was pre-checked when he visited the webpage to create the screenshot.

At this procedural stage, the Court must construe factual disputes in favor of the non-moving party, *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002), so the Court assumes for the purpose of this motion that the acceptance box is pre-checked. Additionally, Plaintiff verified in his affidavit that the button to complete his account set up said "See Job Matches" and not anything about agreeing to or accepting the terms and conditions. (Pl.'s Aff. ¶ 14, ECF No. 18-1).

Defendant argues that its webpage presents a "clickwrap agreement." Indiana accepts "clickwrap" agreements, which "appear on a webpage and require that the user consent to any terms and conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction." *Jallali v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 908 N.E.2d 1168, 1173 (Ind. Ct. App. 2009) (citing *Adsit Co. v. Gustin*, 874 N.E.2d 1018, 1023 (Ind. Ct. App. 2007)). "The primary focus when deciding whether a clickwrap agreement is enforceable is whether the party clicking it had reasonable notice of and manifested assent to the agreement." *Id.* (citing *Adsit Co.*, 874 N.E.2d. at 1023). The "inquiry does not focus on each party's subjective intent, but focuses on each party's outward manifestation of intent." *Ellison v. Town of Yorktown*, 47 N.E.3d 610, 619 (Ind. Ct. App. 2015).

"There is nothing automatically offensive about [clickwrap] agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016) (collecting cases); *accord Adsit Co., Inc. v. Gustin*, 874 N.E.2d 1018, 1023 (Ind. Ct. App. 2007). "Assent may be expressed by acts which manifest acceptance." *Nationwide Ins. Co. v. Heck*, 873 N.E.3d 190, 196 (Ind. Ct. App. 2007). "The intention of the parties to a contract is a factual matter to be determined from all the circumstances." *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005) (citing *Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994)).

In *Sgouros*, the button clicked was "I Accept." In *Jallali*, it was "Accept." Here, the "click" at issue did not refer to any acceptance or agreement. "See Job Matches" does not indicate assent or connect clicking the button to a contract's terms. Plaintiff, by clicking, only indicated that he wished to "See Job Matches." No text informed him that, by clicking the button, he was agreeing to a contract. The separate check box, which Plaintiff attests he did not click, is the means by which a party agrees to the contract. Thus, the Court finds that the Website does not provide reasonable notice that a click will manifest assent, so the clicking of "See Job Matches" cannot be used to show that Plaintiff assented to the arbitration agreement.

Defendant asserts that Plaintiff's failure to "opt out" by unchecking the check box fails on the current record. First, though Plaintiff attests that the check box was already checked when he visited Defendant's website, he does not attest or assert that he knew what text accompanied that box. Second the opt-out option here was not as conspicuous as that in the cases Defendant cites in support. In *Winters v. AT&T Mobility Services, LLC*, an employee was sent an email that bore the header "REVIEW REQUIRED", informed the employee that "**it is very important for you to review the Management Arbitration Agreement linked to this email**," and provided opt-out

5

information. No. 4:17-cv-04053, 2017 WL 2936800, at *3 (C.D. Ill. July 10, 2017). In *Johnson v. Harvest Management Sub TRS Corp.—Holiday Retirement*, an arbitration agreement with an opt out provision was sent by U.S. Mail to employees. No. 3:15-cv-26, 2015 WL 5692567, at *1 (Sept. 25, 2015). The agreement indicated that, "**If you do not opt out in this manner, your acceptance of employment or continued employment with the Company will mean that you accept the terms of this Agreement.**" *Id.* The employer also posted the agreement on its internal portal and included information about the agreement in its monthly publication. *Id.*

By contrast, Defendant did nothing that drew attention to the pre-checked box, which was not in bold typeface and was below the button clicked by Plaintiff, instead of appearing in the line of boxes to fill out to create an account. No evidence shows any indication that Plaintiff was advised to read the entirety of the webpage or that he needed to opt out of the agreement. There are simply too many differences between this case and *Winters* and *Johnson* for those cases to aid the Court on this issue.

Here, Plaintiff's actions were clicking a "See Job Matches" button and taking no action regarding a check box below that button. On the evidence before the Court viewed in the light most favorable to Plaintiff, Plaintiff did not in any way interact with the part of the webpage regarding the arbitration agreement. His actions stopped with the "See Job Matches" button, which was above the arbitration agreement check box. The factual question of whether Plaintiff assented to the arbitration agreement cannot be determined on this briefing. Therefore, the Court cannot order arbitration at this time.

### B. Consideration

Plaintiff also argues that there is insufficient consideration to form a contract, but on this matter, he is mistaken. Indiana law regarding consideration is as follows.

> To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee. A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled. A detriment on the other hand is a legal right the promisee has forborne. The doing of an act by one at the request of another which may be a detrimental inconvenience, however slight, to the party doing it or may be a benefit, however slight, to the party at whose request it is performed, is legal consideration for a promise by such requesting party. In the end, consideration—no matter what its form—consists of a bargained-for exchange.

*Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC*, 935 N.E.2d 174, 179 (Ind.2010) (internal citations and quotation marks omitted).

Defendant asserts that the consideration for the contract is the ability to use the exclusive portions of Defendant's website for service professionals. Plaintiff's counter to this assertion—that Plaintiff had no intention to use this consideration—does not overcome the existence of the consideration. Assuming Plaintiff consented to the contract, the ability to use the website's exclusive portions is adequate consideration.

### C. Unconscionability

A contract is unenforceable if it is unconscionable. "[T]o be unconscionable, a contract 'must be such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept.'" *Precision Homes of Ind., Inc. v. Pickford*, 844 N.E.2d 126, 132 (Ind. Ct. App. 2006) (quoting *Progressive Constr. & Eng'g Co. v. Ind. & Mich. Elec. Co.*, 533 N.E.2d 1279, 1286 (Ind. Ct. App. 1989)). Under Indiana law, unconscionability comes in two forms: substantive and procedural. "Substantive unconscionability refers to oppressively one-sided and harsh terms of a contract, while procedural unconscionability involves the manner and process by which the terms become part of the contract." *DiMizio v. Romo*, 756 N.E.2d 1018, 1023 (Ind. Ct. App. 2001).

Plaintiff argues that the arbitration agreement is substantively unconscionable because the contract provides Defendant with the unilateral ability to decide whether to arbitrate or proceed

7

through litigation in the judicial system. Contract provisions, however, do not need to impose identical duties on all parties. For example, a contract for a sale of goods provides that one party will provide money to another party, and that other party will provide a good to the first party. The duties are not identical. Plaintiff's argument here, in essence, is a return to his argument that the arbitration provisions lack consideration because Plaintiff did not intend to benefit from the consideration offered. The Court rejected that argument above, and it does so again here.

Plaintiff's procedural unconscionability argument fares no better. In essence, he argues that "clickwrap" agreements as a whole are unconscionable because no bargaining process is involved. As noted above, Indiana law allows clickwrap agreements. On the arguments presented, the Court does not find the arbitration agreement to be unconscionable.

### D. Scope of the Arbitration Agreement

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). "[A] disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." *Id.* The Court has found that a factual dispute precludes a decision this time regarding whether Plaintiff agreed to the arbitration agreement. For the purpose of resolving the question of arbitrability, the Court with assume, *arguendo*, that he did.

The arbitration agreement provides: "At the sole option of Smith, any claim, dispute or controversy *arising out of, relating to or concerning in any way the Agreement or use of the Website* shall be resolved by binding arbitration." (Smith Consumer Provider Agreement 13, ECF No. 16-3) (emphasis added). Plaintiff's claims are that Defendant violated the TCPA by sending unsolicited texts to Plaintiff's cell phone number. The question for the Court to decide is whether

the alleged TCPA violations arise out of, relate to, or concern either the "Agreement"—that is, the Smith Consumer Provider Agreement—or the Website. Defendant does not attempt to connect Plaintiff's claims to the Website, but it does argue that the claims are connected to the Agreement.

Defendant argues that the Agreement "delineates the services provided by GoSmith, which include notifying service providers of a homeowner's request for bids on a home improvement project." (Rep. 16, ECF No. 19). Plaintiff counters that the arbitration agreement cannot apply to texts sent before Plaintiff created his account with Defendant. The Court agrees. The text of the Agreement says that "Smith will inform Service Providers *with profiles that match the services requested by Consumer*." (Smith Consumer Provider Agreement 3, ECF No. 16-3) (emphasis added). Any texts that were sent before Plaintiff had an account with Defendant do not arise out of, relate to, or concern the type of communications provided for in the Agreement. *Accord Palmer v. Menards*, No. 3:12-cv-828, 2013 WL 3147374, at *4 (N.D. Ind. June 17, 2013) (finding arbitration agreement does not apply to claims arising before the agreement was entered into).

Regarding texts sent after Plaintiff created an account, Plaintiff asserts that the alleged TCPA violations are not within the scope of the arbitration agreement. The contents of the alleged text messages are not before the Court. The complaint alleges that the messages were "unsolicited sales text messages . . . because Defendant wished to advertise and market its products and/or services." (Compl. ¶ 8, ECF No. 1). Defendant seems to imply that any text message fitting this description would arise out of, relate to, or concern the Agreement's provision about notifying service providers. However, the Court does not find that to be the case. For instance, invitations to sign up for an account with Defendant's website is not a notification of a service request and, without more, the Court is unwilling to find that such a text would necessarily arise out of, relate to, or concern the Agreement. Accordingly, there are insufficient facts before the Court for the

Court to determine whether the arbitration agreement covers the controversies presented in Plaintiff's complaint.

### E. Further Proceedings

The Federal Arbitration Act provides: "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Additionally, "[i]f no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue." *Id.* Though the parties disagree on how the Court should rule on the instant motion, they do agree, given the Court's ruling, on the procedure that should follow: limited discovery and permission for a renewed motion, to be followed, if necessary, by a § 4 trial.

### CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Defendant GoSmith, Inc.'s Motion to Compel Arbitration and Dismiss or Stay Proceedings [DE 16]. Further proceedings are necessary to determine whether Plaintiff must submit his claims to arbitration.

The Court **ORDERS** the parties to confer with each other and file a joint proposed plan on limited discovery. The Joint Statement shall be filed by **March 13, 2020**.

SO ORDERED on February 20, 2020.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT